IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| KC'S PUB, LLC, | : | |
| | : | CASE NO. 5-09-bk-06686 RNO |
| Debtor | : | |

*****************************************************************************

| | |
|---|---|
| ROBERTA A. DeANGELIS, ACTING | : |
| UNITED STATES TRUSTEE, | : |
| | : |
| Movant | : |
| | : |
| v. | : |
| | : |
| KC'S PUB, LLC, | : |
| | : |
| Respondent | : |

# **OPINION**[1]

The Movant, the United States Trustee ("UST") filed a Motion to Dismiss Chapter 11 Case. The UST alleges that the Debtor, KC's Pub, LLC ("Debtor"), failed to maintain "appropriate insurance". Specifically, the UST alleges that the Debtor's failure to obtain liquor liability insurance coverage, also known as dram shop coverage, constitutes cause for dismissal of the Chapter 11 case. For the reasons stated below, I find that the UST has failed to state cause for dismissal of this case.

**I.      Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(2). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[1]       Drafted with the assistance of Benjamin Hackman, Summer Intern

**II. Facts**

On August 31, 2009, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. The Debtor operates a restaurant and tavern which serves food and alcoholic beverages.

On November 18, 2009, the UST filed a Motion to dismiss the Chapter 11 case. The dismissal motion alleges, *inter alia*, that the Debtor has not maintained liquor liability or dram shop insurance coverage.

The Debtor filed a timely answer to the UST's Motion to Dismiss. A hearing on the Motion to Dismiss was continued several times and, on April 8, 2010, a hearing was held at which time oral argument was presented. An Order was entered on April 8, 2010, providing for the filing of a stipulation of facts and briefs from the UST and the Debtor.

On April 16, 2010, the parties filed a Stipulation of Facts. The stipulated facts, with the numbered paragraph reference taken from the stipulated facts, include the following:

> 5. Debtor owns and operates a restaurant and tavern and serves both food and liquor to the general public.
>
> 7. Debtor presently has in force the following policies of insurance:
>
>> a. Commercial general liability insurance, with coverage limits of $1,000,000 per occurrence, $2,000,000 aggregate, $300,000 building and $50,000 building contents. See Exhibit 1.
>>
>> b. Workers compensation and employers liability insurance, with coverage limits that comply with Pennsylvania statutory requirements. See Exhibit 2.
>>
>> c. Unemployment compensation insurance, with coverage limits that comply with Pennsylvania statutory requirements. See

2

<u>Exhibit 3</u>.

8. Debtor does not maintain liquor liability (i.e., "dram shop") insurance coverage.

9. Coverage for liquor liability claims is excluded from Debtor's commercial general liability coverage.

11. Debtor is not aware of any liquor liability claims having been filed against Debtor either post-petition or since Debtor acquired and began operating the business in 2005.

12. Debtor is not required to maintain liquor liability insurance under Pennsylvania state law.

On April 27, 2010, an Affidavit was filed by Kathleen Kijewski, as the sole limited liability company member and operating manager of the Debtor. The Affidavit avers that Ms. Kijewski has been trained and certified through programs in New Jersey and Pennsylvania; the purpose of both programs is to limit liability by training ". . . servers, sellers, and consumers of alcohol how to prevent intoxication, drunk driving, and underage drinking." Aff. of Kathleen Kijewski ¶ 3. The Affidavit avers that Ms. Kijewski has trained all servers at the Debtor's establishment to comply with the standards set forth in the training programs. The Affidavit also avers that no dram shop claims have been asserted against the Debtor or any third party insurer, either prior to or after the Chapter 11 petition filing. Legal memorandums have also been filed by the UST and the Debtor.

3

**III. Discussion**

The Motion to Dismiss by the UST, a party-in-interest, is brought pursuant to 11 U.S.C. § 1112(b)(1)[2]. This subsection of the Bankruptcy Code was redrafted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). Section 1112(b)(1) provides:

> (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

BAPCPA provides illustrative examples of what constitutes "cause". One example of cause is:

> (C)   failure to maintain appropriate insurance that poses a risk to the estate or to the public; . . .

Section 1112(b)(4)(C).

The crux of the UST's argument is that the Debtor's failure to maintain liquor liability or dram shop insurance coverage constitutes cause pursuant to this subsection.

It is noted that the enumerated examples of "cause" to convert or dismiss a Chapter 11 case listed in § 1112(b)(4) are illustrative and not exhaustive. *In re 3 Ram, Inc.*, 343 B.R. 113, 117 (Bankr. E.D.Pa. 2006). Further, the initial burden lies with the movant, in this case, the UST, to establish "cause" for dismissal. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

4

(Bankr. M.D.Pa. 2007). If the UST establishes "cause", then the burden shifts to the Debtor to prove that the case falls within the "unusual circumstances" exception to dismissal described in § 1112(b)(2).

### A. Has the UST Stated Cause for Dismissal?

In its argument, the UST maintains that:

> . . . it is simply a matter of common sense for the Court to conclude that liquor liability insurance is *"appropriate"* coverage within the meaning of 11 U.S.C. § 1112(b)(4)(C) for a debtor that describes itself as a "pub" and which serves liquor to the general public, since claims based upon Pennsylvania's dram shop statute are a material risk to which Debtor is continually exposed in the course of its daily operation. (Emphasis added.)

Mem. of Law in Supp. of UST's Mot. To Dismiss p. 9.

The Debtor counters the argument of the UST by citing Pennsylvania's failure to require that liquor licensees maintain dram shop coverage. Debtor's Mem. in Opp. p. 5.

Neither the UST nor the Debtor has cited any judicial opinions which address the specific issue of whether or not dram shop coverage is required for a debtor to have "appropriate" insurance within the meaning of § 1112(b)(4)(C). Nor is there any evidence in the record concerning what percentages of restaurant/taverns in the Commonwealth of Pennsylvania do or do not maintain liquor liability/dram shop insurance coverage.

In order for the UST to meet its initial burden to show "cause", I must find that the Debtor failed to maintain "appropriate" insurance coverage. In determining what is "appropriate", I first consider a rule of statutory construction. When the statute's language is plain, the sole function of the courts, at least where the disposition by the text is not absurd, is to enforce it according to its terms. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,

530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *Lamie v. U. S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). My understanding of the ordinary meaning of "appropriate" is something that is suitable or fitting.

I recognize that, generally, a debtor-in-possession is bound by all the fiduciary duties of a bankruptcy trustee. *In re Insilco Technologies, Inc.*, 480 F.3d 212, 215 (3d Cir. 2007). Further, a debtor-in-possession has a fiduciary duty to all of its creditors. *In re G-I Holdings, Inc.*, 385 F.3d 313, 319 (3d Cir. 2004).

I find it is very important that the Debtor, to discharge its fiduciary duty, maintain sufficient insurance coverages. As noted above, it has been stipulated that the Debtor maintains commercial general liability insurance with $2,000,000.00 of aggregate insurance coverage and, it also maintains worker's compensation, employer's liability insurance and unemployment compensation insurance in compliance with Pennsylvania's statutory requirements. The facts at bar are readily distinguishable from a case recently considered by the Bankruptcy Court for the Eastern District of Pennsylvania. In that case, the debtor, a gas station operator, did not maintain any hazard or liability insurance coverage. *In re Ramreddy, Inc.*, 2009 WL 3763988 (Bankr. E.D.Pa. 2009) (case converted to Chapter 7).

In this case, the Debtor is maintaining considerable insurance coverages which I find are concomitant with the fiduciary obligation to its creditors. To determine whether or not acquiring liquor liability/dram shop coverage would be appropriate here, I have looked to the provisions of Pennsylvania law to see what light they shed on the Debtor's choice of insurance coverages here.

A portion of the Pennsylvania Liquor Code provides:

**It shall be unlawful–**

6

> **(1) Furnishing liquor or malt or brewed beverages to certain persons.** For any licensee or the board, or any employe, servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor: Provided further, That notwithstanding any other provision of law, no cause of action will exist against a licensee or the board or any employe, servant or agent of such licensee or the board for selling, furnishing or giving any liquor or malt or brewed beverages or permitting any liquor or malt or brewed beverages to be sold, furnished or given to any insane person, any habitual drunkard or person of known intemperate habits **unless the person sold, furnished or given alcohol is visibly intoxicated or is a minor**. (Emphasis added.)
>
> 47 P.S. § 4-493.

The above provision of Pennsylvania law has been interpreted as imposing liability on a liquor licensee in certain circumstances but not as imposing any requirement that a licensee maintain insurance coverage to cover possible losses incurred as a result of liquor law liability. *Fizz v. Kurtz, Dowd & Nuss, Inc.*, 360 Pa.Super. 151, 155-156, 519 A.2d 1037, 1039-1040 (1987).

The Pennsylvania legislature has chosen to mandate insurance coverage in several areas. The following are several examples of required insurance coverage: (1) automobile insurance, 75 Pa.C.S.A. § 1786; (2) worker's compensation insurance, 77 P.S. § 501; and, (3) licensed physical therapists, 63 P.S. § 1309(b)(4). I consider the decision of the Pennsylvania legislature not to require liquor liability/dram shop insurance coverage relevant in considering any affect on the public implicated by this decision.

47 P.S. § 4-497 has been held to shield liquor licensees from third party liability except where the licensee or its agent or employee serves a visibly intoxicated customer or a minor. *Detwiler v. Brumbaugh*, 441 Pa.Super. 110, 656 A.2d 944, 946 (1995). Further, evidence of

7

Case 5:09-bk-06686-RNO    Doc 116    Filed 06/03/10    Entered 06/03/10 13:50:35    Desc
Main Document    Page 7 of 10

visible intoxication may be presented by eyewitness testimony or by circumstantial evidence. *Fandozzi v. Kelly Hotel, Inc.*, 711 A.2d 524, 527 (Pa.Super. 1998).

I have given due consideration to the record presented herein and the applicable law that I have found. I recognize that a debtor-in-possession's fiduciary duty to its creditors will, to some extent, circumscribe a debtor's freedom of action. However, the Debtor remains in possession of its assets and I find that the Court should grant some deference to the Debtor's reasonable economic choices and its assessment of the consequential risks resulting therefrom. I return to where I started this analysis - the language of the statute. I assume that Congress chose its words carefully when drafting BAPCPA. I believe use of the word "appropriate" to modify insurance connotes the intention that the surrounding circumstances of the Chapter 11 case be considered. Clearly, what is "appropriate" attire at a picnic is unlikely to be "appropriate" attire at a formal dinner.

I find that among the relevant factors a bankruptcy judge should consider to determine whether a debtor-in-possession is maintaining "appropriate insurance" are: (1) applicable requirements under other federal or state laws; (2) the debtor's size and the complexity of the case; (3) the debtor's financial wherewithal to purchase insurance; (4) the existence of or lack of pre- or post-petition uninsured claims against the debtor; (5) any steps taken by the debtor to reduce the risk of claims; and, (6) the best interests of creditors.

Application of the above factors in the instant case leads me to conclude that the Debtor is maintaining appropriate insurance coverage and that the UST has failed to establish cause for dismissal of the Chapter 11 case. First, I have discussed above the requirements of Pennsylvania law concerning dram shop coverage. Second, the Debtor is a small business debtor as defined in

§ 101(51D). The Debtor listed assets valued at $300,000.00 and liabilities totaling approximately $345,000.00. This is not a complex Chapter 11 case, the Debtor is a limited liability company with a sole member. Third, a review of the Debtor's monthly operating reports show a situation where the Debtor fluctuates between fairly profitable months and months when operating losses are being incurred. The amended January, 2010 Monthly Operating Report shows a gross monthly profit of $7,557.66. However, the March, 2010 report shows a gross loss of $48.00 and the April, 2010 report shows a gross monthly loss of $1,483.00. On balance, it is clear that the Debtor does not have easily available funds to purchase additional insurance coverage. Fourth, as noted above, the parties have stipulated that no dram shop claims have been filed against the Debtor since it began operating its business in 2005. Fifth, as also discussed above, the Debtor has a training program in place in an effort to reduce the risk of dram shop claims. The sixth factor which I consider relevant is the best interests of creditors. No plan or disclosure statement have been filed to date in this proceeding. The Court did enter a Scheduling Order requiring that any plan and disclosure statement be filed by June 27, 2010 and exclusivity, which was extended by Court Order dated March 24, 2010, is still in effect. I have little evidence concerning what a liquidation of the Debtor would yield to creditors. Schedule A indicates that the Debtor has "an equitable interest" in a piece of real estate which is valued at $300,000.00; a secured mortgage claim, of approximately $288,000.00, is included on Schedule D. No personal assets are listed on Schedule B. Thus, it appears that the greatest likelihood of a distribution to unsecured priority and non-priority creditors is a successful Chapter 11 reorganization.

At least one Bankruptcy Court has applied a materiality standard as to whether a debtor's insurance in place poses a material risk to the estate or the public under § 1112(b)(4)(C). *In re Melendez Concrete, Inc.*, 2009 WL 2997920 (Bankr. D.N.M. 2009) (absence of certain secured items on insurance policy equipment list not material). Similarly, I do not find the Debtor's lack of liquor liability/dram shop coverage to be material in this instance. I find that the UST has not stated cause for dismissal of this Chapter 11 case.

### B.    Unusual Circumstances

Since the UST has failed to show cause for dismissal under § 1112(b), it is unnecessary for the Court to consider whether or not "unusual circumstances" are present in the case at bar.

## IV.    Conclusion

The Motion of the UST to dismiss is denied. An order will be entered consistent with the foregoing Opinion.

By the Court,

*[signature]*

Date: June 3, 2010

Robert N. Opel, II, Bankruptcy Judge
(BI)

*This opinion is electronically signed and filed on the same date.*